IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **PENNY JOHNSON** | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* Civil No. **PJM 10-01719** |
| **JOHN FERNANDEZ** | \* |
| *as Assistant Secretary of the* | \* |
| *Economic Development Administration* | \* |
| | \* |
| Defendant**.** | \* |

**MEMORANDUM OPINION**

Penny Johnson, *pro se*, has sued John Fernandez, Assistant Secretary of the Economic Development Administration ("EDA"), over his agency's denial of two grant applications filed by Johnson on behalf of her company, Houses by PJ Design ("HPD").[1] Her complaint consists of six counts: (1) deprivation of an intangible right to honest and impartial government under 18 U.S.C. § 1346, (2) false or misleading representation under 15 U.S.C. § 1692(e), (3) deprivation of rights under 42 U.S.C. § 1983, (4) fraud, (5) discrimination under 15 U.S.C. § 1691, 42 U.S.C. § 3605 and the 14th Amendment, and (6) conspiracy to interfere with civil rights under 42 U.S.C. § 1985 and § 1986.

Fernandez has filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment [Paper No. 16] under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). For the reasons that follow, the Court will **GRANT** the Motion to Dismiss.

---

[1] In the grant applications, Johnson describes herself as president, executive director, and chief financial officer of HPD.

1

**I.**

As a bureau of the Department of Commerce, the EDA's mission is to advance economic growth. Under its authorizing statute, the Public Works and Economic Development Act of 1965, 42 U.S.C. § 3121, *et seq.*, the EDA is empowered to make grant-based investments in communities and regions experiencing chronic high unemployment and low per-capita income. The Local Technical Assistance grant, one of four types of grants offered by the EDA in the category of technical assistance, is aimed at filling knowledge and information gaps that prevent leaders in the public and nonprofit from making optimal decisions with respect to local economic development issues.

Johnson submitted two applications for Local Technical Assistance grants in 2010. Her first, submitted on February 12, sought $2 million to rehabilitate foreclosed properties in Detroit (the "Detroit proposal"). Her second application, submitted on May 6, sought $2.457 million for a bio-fuel project in South Carolina (the "South Carolina proposal"). Both applications were denied.

C. Robert Sawyer, the EDA's Chicago Regional Director, denied the Detroit proposal by letter dated March 11, 2010. His letter stated that the EDA does not award grants to for-profit companies. In response, Johnson sent Fernandez a letter complaining of "blatant discrimination" in the grant award process and accusing Sawyer of lying.

Willie Taylor, the EDA's Philadelphia Regional Director, was thereafter assigned to investigate Johnson's complaint. According to Johnson, Taylor told her in a telephone conversation that her proposal did not meet the program's requirements because her company

was for-profit, that she did not have matching funds, and that funding could not be used to start or expand a business. On June 8, Sawyer sent Johnson a second denial letter noting that her application did not include matching funds and that the EDA had determined that her application was not competitive.[2]

H. Philip Paradice, Jr., the regional director of the EDA's Atlanta office, denied Johnson's South Carolina proposal by letter dated May 27, 2010. Her letter stated that Johnson's proposal was unclear about the amount of money requested, did not state the source of a local match, did not include a documented commitment of jobs or private investment, and lacked a detailed narrative sufficient to show the scope of the work or to demonstrate feasibility, impact or sustainability, among other deficiencies.

Johnson alleges that Fernandez and the EDA engaged in deceit and misrepresentations in denying her grant proposals and that the true reason for the denials was discrimination against women and African-Americans. In regard to both proposals she asserts that, in contrast to what EDA officials reviewing her proposals told her, the EDA may in fact make an award to a for-profit organization and that it in fact did have the discretion to waive the matching fund requirement. With respect to the Detroit proposal, Johnson disputes Taylor's contention that funding for the proposal would have expanded her business, arguing it would only have been a temporary project. As to the South Carolina proposal, Johnson argues that by listing the jobs that would have been created by her project, her application met the requirement that a "documented

---

[2] Fernandez himself sent Johnson a letter on June 25, 2010, reassuring her that the Detroit proposal had been fully considered "solely on merit," stating that because her application failed to meet the requirement of matching funds, it was found "non-competitive in comparison to other proposals."

3

commitment of jobs" be provided. She further argues that the reasons the EDA gave her for denying the South Carolina proposal were contradictory.[3]

In this lawsuit, Johnson asks for an injunction ordering the EDA to award her the two grant applications and to cease from engaging in discriminatory practices and denying equal access to funding opportunities.

Fernandez submits that Johnson's suit is barred by sovereign immunity and that she has failed to state a claim on any count. He also says that Johnson's applications were legitimately denied on the grounds that they were not competitive in comparison with other proposals and that Johnson's race and gender in no way factored into the decisions. Fernandez suggests that denial of Johnson's applications could not have been based on race because EDA personnel adjudicating her applications lacked any knowledge of her race, since the applications did not request such information. He argues that Johnson's applications were reviewed according to usual procedure and were found to have several deficiencies:

First, he says that the proposals sought more money than the entire Local Technical Assistance program had to give. Thus the EDA had a total of $1,362,592 available in Local Technical Assistance grant money for fiscal year 2009, with an average award for the prior fiscal year amounted to $61,000, whereas Johnson sought for herself alone grants of $2 million and $2.457 million—far greater than all the funds available through the program that year and far greater than the average award.[4]

---

[3] She states, for example, that while the letter rejecting the South Carolina proposal said the amount requested was unclear, it also referred to her request for $2,457,000.
[4] Although Fernandez does not cite the amount budgeted for Local Technical Assistance grants for fiscal year 2010, it appears to have been the same as was available for fiscal year 2009, though indeed in 2010 the average award

Second, Fernandez remains firm that HPD was a for-profit organization, whereas EDA funding is generally limited to nonprofits. While admittedly the EDA may have discretion to provide funding to a for-profit organization, such money cannot be used to expand or start a business. Here, not only was HPD for-profit; the grant money clearly would have expanded HPD's business by boosting its visibility, activity, finances, and business connections.

Third, Fernandez argues that HPD lacked matching funds to finance the proposed projects. The grant program requires that 50 percent of the project be paid for with matching funds or, if no matching funds are secured, that the funding be of no benefit or at most incidental benefit to the recipient. Not only did Johnson's proposals not provide for matching funds[5], says Fernandez; she did not adequately answer questions about how she would benefit from the grant money.[6] In both proposals, Johnson allocated $167,000 in salary for herself to lead the projects. Fernandez points out that by seeking to benefit personally from the grants and by inadequately answering questions about such personal benefit on the applications, Johnson's HPD projects did not qualify for waiver of the matching funds requirement.

Fourth, Fernandez argues that Johnson failed to demonstrate that she had the appropriate credentials to successfully lead the projects. Under 13 C.F.R. § 301.8, when evaluating grant applications, the EDA must consider several criteria, including the strength of organizational leadership. Fernandez says that here, too, Johnson's applications failed to pass muster, since the

---

dropped to $50,000. Solicitation of Applications for the Planning and Local Technical Assistance Programs, 75 Fed. Reg. 72,804 (Nov. 26, 2010).

[5] The Detroit proposal stated that matching funds would be determined "at a later date," but Johnson's budget provided for no matching funds. The South Carolina proposal's budget was based on federal grant money alone and stated that HPD had not as of that time secured non-EDA funding.
[6] In the Detroit proposal, Johnson did not answer the questions about the benefit to the recipient. In the South Carolina proposal, she wrote that the money would "create an entrepreneurial opportunity… [and] support a disadvantaged business," vague terms essentially devoid of meaning.

only experience she listed was a 7-year stint as a licensed real estate agent. Moreover, in the Detroit proposal Johnson disclosed that she had been convicted of a crime or had criminal charges pending against her but failed to supply appropriate details.[7]

## II.

### A.

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir.1999). A court should grant a 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir.1991).

### B.

Unless expressly waived, sovereign immunity protects the United States, its agencies, and its employees acting in their official capacities from suit. *Cnty. of Suffolk, NY v. Sebelius*, 605 F.3d 135,140 (2d Cir. 2010). Subject matter jurisdiction is properly challenged on the basis of sovereign immunity under Federal Rule of Civil Procedure 12(b)(1). *See Williams v. U.S.*, 50 F.3d 299, 304 (4th Cir. 1995). A party suing the United States bears the burden of pointing to an unequivocal waiver of immunity. *Id.* However, sovereign immunity will not bar a suit in two scenarios: if the federal employee acted beyond his statutory powers or the powers or manner in which he or she exercised them were unconstitutional under *Larson v. Domestic & Foreign*

---

[7] The page in the application disclosing criminal history was not included with the South Carolina proposal.

*Commerce Corp.*, 337 U.S. 682 (1949) or if the suit is brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500, *et seq*.[8]

**I.**

*Larson* permits injunctions to issue against federal officials if their actions are "not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void." *Larson*, 337 U.S. at 702. The scope of an official's delegated power is defined by the statute or regulations setting out the official's duties. *Ramon ex rel. Ramon v. Soto*, 9166 F.2d 1377, 1383 n. 7 (9th Cir. 1989). For an officer to be acting *ultra vires*, he must be acting completely outside his governmental authority. *See Cabeza de Vaca Land & Cattle Co., LLC v. Babbitt*, 58 F.Supp.2d 1226, 1230 (D. Colo. 1999). Sovereign immunity is not avoided simply because the officer may have violated the law: an allegation of illegal conduct against the officer, while necessary, is not sufficient to show that the officer was not exercising his statutory authority when he committed the illegal act. *Larson*, 337 U.S. at 693.

Even if an official is shown to have acted *ultra vires* or unconstitutionally, a suit against him may still fail if the requested relief would require "affirmative action by the sovereign." *Larson*, 337 U.S. at 691 n. 11. In the Fourth Circuit, injunctive relief may not issue if the sovereign will be "stopped in its tracks" and there would be a "substantial bothersome

---

[8] Under a third scenario, the Little Tucker Act authorizes plaintiffs to bring suit against the United States founded on the Constitution, federal statute, executive regulation, or government contract. 28 U.S.C. § 1346. However, the Little Tucker Act is inapplicable in this case because Johnson's request exceeds the $10,000 jurisdictional limit for the amount in controversy. Since the amount at issue exceeds $4 million, a suit under this limited waiver of sovereign immunity can only be heard by the Court of Federal Claims. 28 U.S.C. 1491(a)(1). In addition, while Johnson also alleges the tort of fraud, and the Federal Tort Claims Act gives a limited waiver of sovereign immunity for tort claims against the United States, fraud is not one of the types of torts as to which sovereign immunity is waived. *See* 28 U.S.C. § 2680(h) (excluding claims of misrepresentation and deceit against government officials from being actionable under the FTCA); see *also Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d. 91, 96 (3rd Cir. 1995)("[C]ourts have consistently held that fraud claims against the government are not permitted under the FTCA").

interference with the operation of government." *Littell v. Morton*, 445 F.2d 1207, 1214 (4th Cir. 1971); *see also Foreman v. Unnamed Officers of the Fed. Bureau of Prisons*, No. 09-2038, 2010 WL 4781333 at *3 (D. Md. Nov. 17, 2010).

Johnson alleges that the EDA illegally denied her two grant applications. But the grant or denial of such applications falls well within Fernandez' statutory authority, *see* 42 U.S.C. § 3147(a)(1) ("On the application of an eligible recipient, the Secretary may make grants…"), such that Fernandez was not acting *ultra vires* when he denied Johnson's grant applications. Sovereign immunity, therefore, bars Counts I, II, and IV.

Counts III, V, and VI allege constitutional claims, which the Court will treat as claims of denial of substantive due process under the Fifth Amendment.[9]

To state a Fifth Amendment substantive due process claim, Johnson must show that she has a protected property interest of which she has been deprived without due process. *Miller v. Montgomery Cnty. Md.*, No. 09-3137, 2010 WL 3894500 at *11 (D. Md. Sept. 29, 2010). A benefit is not a protected property interest if government officials may grant or deny it at their discretion. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). In the case at hand, as indicated, the EDA had broad discretion to award grant money. 42 U.S.C. § 3147(a)(1). Johnson, therefore, cannot show that she has a protected property interest. In consequence, she cannot make out a *prima facie* case for the denial of substantive due process under the Fifth Amendment.

---

[9] The remedial statute cited in Count III, 42 U.S.C. § 1983, only applies to Constitutional violations by state actors, so the Court looks to its federal analogue, *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), in analyzing the proposed claim. Johnson also alleges a Fourteenth Amendment due process violation. That amendment guarantees due process in state proceedings, but in an action against federal actors, the due process clause of the Fifth Amendment applies.

Although it is unclear, Johnson may also be attempting to assert an equal protection claim under the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (recognizing an equal protection aspect to the Fifth Amendment Due Process Clause prohibiting invidious discrimination). To state such a claim, Johnson faces a high bar: she must show that EDA officials acted with discriminatory purpose. *Washington v. Davis*, 426 U.S. 229, 239 (1976). While Johnson asserts *passim* that her grant applications were discriminatorily denied, she adduces no evidence whatsoever to suggest that her race or sex played any part in the review process, much less does she demonstrate the least trace of discriminatory purpose in denying her applications.[10] The complaint, in short, is implausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Johnson has failed to state a Fifth Amendment equal protection claim.

Apart from the question of whether Johnson could show that the EDA officials rejected her application on the basis of race or sex or that she has a protected property interest in the grant money, sovereign immunity also bars the Court from granting the relief she requests. She sought over $4 million. That amount is some three times the amount budgeted for all Local Technical Assistance grants for the year she applied, money which presumably has already been distributed. Any order directing the EDA to make an award of the magnitude Johnson prays, both in absolute terms and in relation to the amount budgeted for the program, would unquestionably constitute a "substantial bothersome interference" with the EDA's operation.

---

[10] All Johnson has provided is the EDA's explanations of the denials—explanations she finds suspect—coupled with unsupported allegations of a pattern of racial and sex discrimination on the part of Government agencies. Johnson speaks of "common knowledge" and "statistics"—but no actual statistics in support of her assertions. In her Opposition to the Motion to Dismiss, Johnson states that the Department of Commerce only issued 70 grants to "non-whites" in 2010 but does not state how many grants total were issued and how many minorities applied.

Accordingly, the *Larson* exception is not applicable, and sovereign immunity bars the requested relief.

**II.**

Generally speaking, the APA waives sovereign immunity to allow judicial review of final agency decisions. *Huff v. U.S. Dep't. of Army*, 508 F.Supp.2d 459, 464 (D. Md. 2007). The APA also provides a blanket waiver of sovereign immunity for unconstitutional acts where injunctive relief is requested. *Thompson v. U.S. Dep't of Hous. and Urban Dev.*, No. 95-309, 2006 WL 581260 at *8 (D. Md. Jan. 10, 2006). Suits under the APA, however, are limited to claims "seeking relief *other than* money damages." 5 U.S.C. § 702 (emphasis supplied). As already stated, Johnson is seeking an injunction ordering the EDA to grant her over $4 million. The fact that a judicial remedy may require one party to pay money to another is not enough reason to characterize the relief as "money damages." *Bowen v. Mass.*, 487 U.S. 879, 893 (1988). But a plaintiff may not simply seek money damages in the guise of asking for injunctive relief. *See Portsmouth Redevelopment and Hous. Auth. v. Pierce*, 706 F.2d 471, 474 (4th Cir. 1983) ("Claims Court jurisdiction cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms").

Money damages are given as a substitute for a suffered loss; specific remedies attempt to give a plaintiff the very thing to which she was entitled. *Bowen*, 487 U.S. at 895 (citing *Maryland Dep't of Human Res. v. Dep't of Health and Human Serv.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)). In both *Bowen* and *Maryland Department of Human Resources*, the statute at issue specifically required the government agency to make payments for specified items, and in both cases courts found that the relief sought was specific relief, not money damages. *See Linea Area Nacional de Chile S.A. v. Meissner*, 65 F.3d 1034, 1043 (2d Cir. 1995). Here, in marked contrast,

the EDA had wide discretion to award Local Technical Assistance grants under 42 U.S.C. §3147(a)(1), to which Johnson clearly had no specific entitlement. Therefore, the remedy she seeks is properly understood as money damages, which are not allowable under the APA.[11] Johnson's claim for an injunction ordering the EDA to award her grant proposals remains barred by sovereign immunity.[12]

**III.**

For the foregoing reasons, the court **GRANTS** Fernandez' Motion to Dismiss [Paper No. 16]. Final judgment will be entered in favor of Fernandez, and the case will be **CLOSED**.

A separate Order will issue.

July 26, 2011

_____ **/s/**_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

---

[11] In any event, agency decisions are only appealable under the APA if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court finds that the EDA conducted a thorough review of Johnson's application and it did not abuse its discretion when it denied the grant applications.

[12] Johnson also requests a permanent injunction prohibiting the EDA from discriminating in its selection practices and denying equal access to EDA funding opportunities. Johnson lacks standing to seek such relief since, as indicated, there is absolutely no basis—apart from her own speculation—that any racial or gender discrimination was ever involved in this or any other case.